My name is Frank Steinbach and I am the attorney for Ceron Williams. Mr. Williams was convicted in the Southern District of Iowa for being a felon in possession of ammunition. We have raised three arguments on his behalf before this court seeking redress of those issues. The first issue that we are addressing is that one of the detectives on the case, Detective White, was allowed to testify about something that he believes he saw in a video. Just by way of background for the court, there is something common through every convenience store probably through the United States and that is they all have video cameras. And they have video cameras that show the store, the doors, all of those types of things for the protection of the people. In this instance, the entire episode, which takes approximately three minutes, was all captured on video. The video was played in court and then it was played by stop frame photographs of the video. In the video, the angle from where we could see, and it was played at trial, was from inside the store looking out the front door. The entire store front is glass. It's 4.30 in the morning. It's in November so it's dark out. It had either rained or snowed so there was moisture. And you have various things that you could see on the video that may or may not have been there. And that was one of the arguments that I was trying to raise is you have this video and let's let the jury decide for themselves what they actually see. The detective who obtained the video… Is your argument simply about whether or not there were shots fired that night and that the testimony was improper as to that particular fact? What we were arguing is that the detective testified that you could see a muzzle flash. Well, I guess my question is, and obviously you think it matters, but why does it matter? Isn't the question about… I mean, no one doubts that… I mean, I've seen the pictures and the briefs of the shell casings. There were gunshots outside. The question is who fired, right? So I'm wondering, even if this was an abuse of discretion, how did it The… and the government points out in their brief there are five individuals that testified against Mr. Williams. Raylon Canada. Raylon Canada is brought into the courtroom in a jail jumpsuit, in cuffs, because he is under federal indictment and was arrested. His girlfriend was one of the other females that testified and then the other female is a friend of hers and they all had baggage that I believe when I was cross-examining them, I was impeding their believability, their credibility. On what issue? That there were shots fired or that your defendant fired them? That the defendant was the person who was firing those. So why does it matter if the officer said, yeah, there were gunshots out there? The testimony about whether or not there was gunshots out there is more relevant to the muzzle flash because we have testimony that the alleged victim, or the victim in this case, Mr. RML, he also had a gun. And what the detective was saying is that the individual in this picture, you can see this muzzle flash from his extended arm. And what my argument was, let's let the jury decide what they see on this video. I don't want the jury who are sitting there listening to Mr. Canada who is in cuffs, his girlfriend who doesn't want Mr. Canada to get in trouble. Keep in mind that the confrontation was between Mr. Canada and Mr. RML. They are the ones that were going at it, if you will. Mr. Canada, earlier in the evening, had fake texted Mr. RML, hey, come meet us, because Mr. RML was texting his girlfriend. And so Mr. Canada was the one that lured Mr. RML to come over to that convenience store. So Detective White's testimony becomes prejudicial to Mr. Williams, not because he testified, hey, here's a video, watch it, but because he was allowed to say what he saw in that video and substituting his interpretation of what he saw for what the jury. We've got a very recent case, United States v. OBI. Are you familiar with that? I am not, Your Honor. I'm sorry. Well, I wrote it. It attempts to clarify the government's burden of proof in a possession of ammunition case. And there are three elements. Was there a shooting? Did the defendant do the shooting? And is the ammunition at the scene from that gun? Now, it seems to me that since the government has to prove those three, and that was in OBI extracted from other cases, but I don't think it surprises anybody. It seems to me with those three elements at issue, White's testimony is clearly relevant to not only whether there was a shooting by the man with the gun if that was the defendant, but is the ammunition at the scene attributable to the gun? If the jury decides, yes, he had a gun, and yes, the gun was fired, the government still has to prove the ammunition came from that gun. And I don't see how you can dispute the relevance of the muzzle flash testimony, assuming, of course, that the defective or Sergeant White was properly trained by, capable by training and experience to give that kind of sophisticated, for lack of a better word, lay testimony. What's wrong with that analysis? Well, and I don't disagree with the court's analysis. What my issue is, is that Detective White is called as a lay witness. Yes, he is a police officer. Yes, he is the investigative officer. But as it relates to what is in a video, what does, what impact does going through the refraction of light from 430 in the morning with lights behind and lights in front have on whether What case says that you can limit the government's proof, evidence, you know, relevant evidence to what you want the jury to be limited to? It's relevant, right? Relevance is the issue, isn't it? Or are you saying unfair prejudice? Well, I'm saying that his testimony, specifically about the muzzle flash, is unfair because So it's a 403 argument? Or is it a 700-whatever argument? Well, in my brief, I argued it was a 701 type of argument. Yeah, I thought so. So now you're falling back on 403? I believe that it also has implications for it, Your Honor. Well, I think my question was how can you refute the relevance under the OB analysis I outlined? It is fair conceded that that's the right analysis for an ammunition possession only case. Right. And it's very difficult from the appellant's standpoint to contradict that, Your Honor. In this instance, for Mr. Williams, in the testimony and during the trial, had Detective White only been allowed to present the videos and been allowed to testify about his investigation without giving his opinions as it relates to something that the jury could have determined themselves, is prejudicial and But your argument is limited to the testimony about the muzzle, correct? Yes. Because I think you had an objection generally to his sort of commentary on the video, right? That is correct. And not to belabor it, but are you kind of a combination of that's expert testimony and it's prejudicial? Is that kind of where you are now? I believe his testimony about his police work, here's what a detective does, I believe is appropriate. But when he talks about what he sees, that's not an expert, that's a layperson type of thing. Secondly, we believe that the court's allowing the testimony about the muzzle flash is such that it is an error and that Mr. Williams should be allowed a new trial with that testimony specifically stricken. Yes, I understand that it may be viewed as a very small or insignificant issue, but if that's the case, then why have the government even present that? Just play the video and let the jury make the determination. Let the jury decide. Well, the trouble is firearms, when the possession is only the ammunition, the government has a tougher case to prove. Correct. I would agree with that, Your Honor. So that's the way they decided to try to do it here. Right. So, if Mr. Williams is not granted a new trial, then what we are arguing is that the sentencing guideline that was selected and then the ultimate sentence was an error by using the 2X1.1 cross-reference. We start off with a 2K2 assessment. Then there's a cross-reference to if there is a more applicable section. And the court found that that was the situation and that we should be looking at a more serious crime. And specifically, the government argued that he should be charged with attempted murder in the first degree. Now, the court specifically made findings that there was insufficient evidence to support that, but she did find that the evidence or information did support an attempted murder in the second degree. And what I am advocating on behalf of Mr. Williams is that there's no specific intent here by Mr. Williams to have attempted to kill Mr. Armel. The fight was between Canada and Armel. The guy who lured Armel is Canada, not Williams. Williams' involvement is he's just the guy standing in the background and then he is accused of this shooting and then convicted. But at most, his actions should be looked at as an assault as opposed to some type of murder. Thank you. Reserve the rest of my time. Thank you. Mr. Curt.  May it please the court, Mr. Steinbach. My name is Adam Curt. I was the prosecutor on this case throughout the proceedings at the district court, including the defendant's trial and his sentencing. I'll start first with the first issue that Mr. Steinbach talked about today with respect to the limited testimony of Detective White, the case agent in this investigation. With respect to that issue, your honors, before I get into the merits of it, I think a close reading of the district court's transcript here on pages 195 through 197 is warranted. I question whether the defense preserved this objection at the district court. What happened here, I was presenting a still frame from the surveillance video. And that's Government's Exhibit 100J. And I asked Detective White, what do you see coming from the end of the individual with the pink cap, who is undisputedly the shooter in this case, what do you see coming from his arm? Mr. Steinbach objected. And the objection that he made was, invades the province of the jury in qualification. The district court then invited me to lay additional foundation, which I then did. And then asked a slightly different question to Detective White. No objection was made after that additional groundwork was laid, and the evidence came in. Was this argued in your brief? Your honor, it wasn't specifically argued in my brief. And I think the district court assumed, for argument's sake, that it had been preserved. And the district court handled it in its denial of the post-trial. Let's go on to the merits. Yes. With respect to the merits, your honor, this was not a clear abuse of discretion by the district court to allow this very limited testimony. The district court talked, and I'll point the court to the district court's order denying the post-trial motions at Docket 92. And it succinctly says, quote, overwhelming evidence supports the jury's guilty verdict, end quote. That accurately encapsulates this case. The testimony here was limited. The testimony here with respect to this matter was just a drop in the bucket as to the evidence in this case. And I do not think it was inappropriate. It's certainly not a clear abuse of discretion. With respect to Judge Cobes' commentary as to how did this, how did allowing this harm the defendant? Frankly, it didn't. The entire video was played. The jury could tell, any lay person can tell from that video, that the individual in the pink cap and the fur hood on the coat was the shooter in this case. But not only that, five eyewitnesses testified, five. Those eyewitnesses all said that the individual wearing the pink cap and fur hooded coat was the shooter. Four out of the five identified it specifically as C. Ron Williams. One of the individuals had not met Mr. Williams previously, but he said, I know it was that guy with the pink cap, the big guy. So we have five eyewitnesses standing mere feet away from this that identify the defendant as the shooter. Not only that, we have a video taken earlier that night by one of the eyewitnesses  And that selfie video shows her, one of her friends, another eyewitness, and the defendant. And what is the defendant wearing earlier that night? The pink cap, the coat with the fur hood. What evidence linked the ammunition to that gun? The defendant took his gun with him and got in the SUV and left. No, that's not the question. Ammunition lying in the street could come from a lot of different places. Yes, Your Honor. I would ask the court to review the video in question here. If the gun he took with him wasn't fired, then you failed to prove your case under Obi. The eyewitness testimony coupled with the video evidence. Did you have forensic evidence that the ammunition came from that gun? No. That's what I thought. We do not have that gun. Correct. Where the shell casings were found. It was the location and the circumstances. That issue can be proved circumstantially, but it has to be put together. Yes, Your Honor. And I believe the trial evidence more than adequately tied those things together. If that gun that he took with him didn't fire, it wasn't fired. I don't know. I don't think you had ballistic evidence of that. Whether it had been recently fired, I don't know. We were never able to recover the gun the defendant fired. Whether that gun was fired is pretty darn important to whether the ammunition lying in the street came from that gun. And the eyewitness testimony indicates that the gun that the defendant was holding fired the bullets that were found on the ground. They didn't know about the ammunition. Okay. It could have fired in the air. It could have gone over whatever vehicle. There were nine shots heard on the video, and there were nine casings found at the scene. In addition to that, Mr. Steinbach did mention that the victim here had a firearm. He did. That firearm was retrieved from his vehicle after he arrived at the hospital. That firearm was still completely loaded. In other words, the magazine was completely loaded, which would indicate that he did not fire shots. All witnesses at the scene indicated that the only person that fired shots was C. Ron Williams. So to go back to where we started, you've given a good argument as to why the case was overwhelming. Why did you need the officer to testify about the muzzle flash? In retrospect, Your Honor, I didn't need that. And that goes to the point where it's harmless because it frankly— Right, right. But no, and I understand. I guess I want to get down to the initial question. There could be a case where you'd have a tougher time arguing that it was harmless than you are confidently arguing today. So what do you think about that particular issue? It seems—why isn't that something that the jury, looking at a video, as your opposing counsel says, there's videos in every convenience store. I mean, this is part of our lives now. We're used to seeing videos. We look at videos all the time. This is something the jury can decide. And as Judge Loken has indicated, it's a pretty important issue where that bullet came from, that case. Yes, Your Honor. The district court did instruct the jury that they needed to make determinations as to who they believed to be credible. Ultimately, the key issue in this case was who fired the shots. And the jury's verdict makes clear that the jury decided who the individual in Exhibit 100J is that's firing the shots. And so the jury did make the determination here, ultimately, with respect to the critical issue. And the district court was careful to ensure that the jury understood that all testimony should be weighed in the same fashion, whether law enforcement or non-law enforcement. I'd like to turn now, Your Honors, if I may, to the third issue raised in the appellant's brief. Do you think we need harmless error to get around this issue? I do not, Your Honor. Well, that's all you've talked about. I do not believe it's error. The district court is afforded wide discretion with respect to evidentiary issues. The standard here is this court reviews evidentiary issues for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict. Here, I don't believe it was error at all, let alone clear abuse of discretion. And then furthermore, this court should not reverse and send back for a new trial because that very limited part of this trial did not affect his substantial rights. We had five eyewitnesses. We had videos that matched up. Well, now you're back to harmless error. Let's move on. Yes, Your Honor. With respect to the third argument that the appellant raises, the sentencing issues with respect to the district court's decision to impose a consecutive sentence, I would direct the court to U.S. v. Benson, a case from the 8th Circuit in 2018. I believe that that is directly on point here. The district court correctly recognized that the guidelines advised that the district court impose concurrent sentences. So the district court correctly recognized that. However, the district court correctly recognized that it had the authority under the statute to impose a consecutive sentence if the circumstances warrant. With respect to whether a consecutive sentence should be imposed, the court should look at the 3553A factors, which is exactly what the district court did here. And the district court specified a variety of 3553A factors that it felt supported a consecutive sentence. The incredibly serious offense, and these are the district court's own words, Williams's continuing conduct of violence, his, quote, pattern of assaultive conduct, his harm to this specific victim. And the conduct that the defendant's actions imposed upon innocent bystanders at this convenience store and in the public. This shooting happened right off of the corner of the Drake University campus. Mr. Williams was acquitted in state court of the more serious charges, correct? Correct, Your Honor. Do you think that the district court relied on that acquitted conduct? There's no indication in the record that the district court considered anything at the state court with respect to its decision here. It's kind of hard to tell based on the descriptions that you're reading and that we've read in the transcript. It's sort of general assaultive behavior and violent conduct, which is, I understand, that's the kind of language that district courts used. But it's kind of hard to look behind that curtain to know. If Your Honor is referring to the court's reference to assaultive conduct, I think that the, this is my interpretation, Your Honor, is that the district court was referring to the criminal history section of the PSR. The defendant had a variety of convictions related to fighting, assaults, and the district court raised the concern that while the defendant was in the Polk County Jail, after his arrest with respect to this shooting, he assaulted two other inmates and was convicted of two separate assaults while he was in the Polk County Jail. So I think that was my inference as to what the court was discussing in that circumstance, Your Honor. Did the district court acknowledge the acquittals at any time during the hearing? Not to my recollection on the record, Your Honor. I think it goes without saying the district court was certainly aware. It was in the PSR as to the acquittals. It was in the papers in the Des Moines area at the time. And so certainly the district court was highly likely aware and would have been aware, but did not reference that in the sentencing transcript to my recollection, Your Honor. With respect to the consecutive sentence, Your Honors, the district court has afforded a broad discretion in this determination, a wide latitude, and certainly the decision here was reasonable. And I would note that the district court specifically noted that it would have sentenced Mr. Williams to more than 120 months if it could, but the statute only allowed 120 months. The court indicated it would have sentenced at 151 months had it been able to. And so I think that that plays into the court's record. That was the range under 2A. Under 2A, the range was 121 to 151, I believe, Your Honor. And so that just shows how serious the court believed that this conduct to be and that the 3553A factors warranted a consecutive sentence. Did the district court discuss sort of the cross-reference to acquitted conduct? I'm guessing the answer is no because we covered this a little bit with the consecutive. But is it fair to say that this was a cross-reference to a guideline that would apply to conduct that he was acquitted of? The district court didn't specify that, Your Honor, but certainly— But is that a fair description? I don't know that it's wrong or improper, but is that a fair description? The district court undertook an analysis to understand what the cross-reference would be, and certainly that was part of what the state tried in its trial. Right, so it was an attempted murder, and isn't that the cross-reference that was used? Yes, Your Honor. That he was acquitted of attempted murder. In Polk County, yes, Your Honor. So it was a cross-reference to conduct that he had been acquitted of. Correct, Your Honor. Certainly, as the court knows, at sentencing it's preponderance of the evidence standard, and in Polk County it was beyond a reasonable doubt. I don't know what the Polk County jury's mind was with respect to these verdicts, but yes. Here, Your Honors, there was no error with respect to sentencing or at trial, and we would ask respectfully that this court affirm the conviction and affirm the district court sentence. Thank you. Thank you. Mr. Steinbach for rebuttal. Thank you, Your Honor. If any person could tell, any lay person could tell by watching the video, then why emphasize the muzzle flash? That's the thrust of what I'm arguing here. We teach our children, listen to police officers, follow police officers. When children become adults, most still listen and follow and believe what an officer says. Because of their position, they seem to hold a mystique that people believe, hey, if that cop said that, then it must be so. That's the problem that I have in this instance. Mr. Williams is saying, if somebody could have just decided by watching the video, the jury, then let's let the jury do it. Don't emphasize one little thing, because that one little thing is something that is huge in regards to this. There was no forensic testing at all on any weapon in any of this, Judge. The credibility of the five people calls into question all of that. The consecutive sentence versus the concurrent, the guidelines say make it concurrent. He's been sentenced to two 10-year sentences, which are consecutive in state court. Let's make the federal sentence also concurrent. The judge chose to make it consecutive. I don't know if the court considered the state court acquittal of the attempted murder charge. It was not specifically addressed. However, there was ample discussion, and I think the record bears that out, that we talked about the charges from state court and how he was acquitted on the attempted murder. We would ask that the court grant him a new trial, and in the event that there is no new trial, that this court change the sentence down to the, as put in my brief, as well as make it concurrent. Thank you very much. Thank you, counsel. The case has been well briefed and argued, and we will take it under advisement.